UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NANCY MALDONADO, as the
Administratrix of the Estate of Jonathan
Maldonado,

                              Plaintiff,

v.

TOWN OF GREENBURGH, *et al.*,

                              Defendants.

---

No. 18-CV-11077 (KMK) (AEK)

ORDER

KENNETH M. KARAS, United States District Judge:

Nancy Maldonado ("Plaintiff") brings this Action, in her capacity as the Administratrix

of the Estate of Jonathan Maldonado, against the Town of Greenburgh (the "Town"), Police

Officer Jean-Paul Lara ("Lara"), Lieutenant Gregory P. Attalienti ("Attalienti"), Police Officer

Richard Maguire ("Maguire"), and Detective/Paramedic Sean Freeman ("Freeman"; collectively,

"Defendants"), alleging numerous constitutional violations and tort law claims. (*See generally*

Am. Compl. (Dkt. No. 63).)  Before the Court is Defendants' Objections to a recent Order from

Magistrate Judge Andrew Krause ("Judge Krause") denying Defendants' Motion To Preclude

certain evidence discovered after the close of discovery, denying Defendants' Motion To

Recover Costs and Fees associated with additional discovery, and granting Plaintiff's Motion To

Reopen Discovery.  (*See* Obj's 1 (Dkt. No. 175); Decision & Order 1 (Dkt. No. 174).)  For the

reasons stated herein, Defendants' Objections are overruled.

## I.  Background

The factual and procedural background in this case is set forth in Judge Krause's Order and the Court assumes the Parties' familiarity therewith. (*See* Decision & Order 1–6.) The Court nevertheless summarizes the relevant facts.

On November 29, 2017, Jonathan Maldonado ("Mr. Maldonado")—Plaintiff's son— walked out of a store in Hartsdale, New York, when an alarm went off. (*See* Am. Compl. ¶¶ 17– 18.) Store employees followed Mr. Maldonado to a nearby park to question him about a suspected shoplifting where they observed Mr. Maldonado put several small envelopes into his mouth as police officers began to arrive at the scene. (*See id.* ¶¶ 29, 31.) A struggle then ensued between Mr. Maldonado and Maguire, Lara, and Freeman during which Lara deployed a Taser on Mr. Maldonado multiple times and Mr. Maldonado became "limp and unresponsive." (*See id.* ¶¶ 30–45.) Attalienti arrived shortly thereafter and ordered Lara to "hold Mr. Maldonado up," after which Freeman administered Mr. Maldonado multiple doses of Narcan—an emergency medication used to reverse opioid overdoses—which had no effect. (*Id.* ¶¶ 48–58.) Mr. Maldonado was then placed in an ambulance where paramedics discovered a number of intact plastic bags in his airway. (*See id.* ¶¶ 61–69.) Mr. Maldonado was then transported to White Plains Hospital where he was officially pronounced dead. (*See id.* ¶¶ 75–79.)

A toxicology report conducted after Mr. Maldonado's death revealed that heroin and fentanyl were present in the bags found in Mr. Maldonado's airway and that "significant levels of fentanyl were present in Mr. Maldonado's urine, gastric contents, and blood." (Decision & Order 2–3.) An autopsy report concluded that Mr. Maldonado's cause of death was "acute mixed drug intoxication" and "[a]ccident." (*Id.* at 3 (quotation marks omitted).)

Despite these reports, Plaintiff alleges that Mr. Maldonado's death was caused by the police's use of force against him, including via Taser use, and not a drug overdose. (*See generally* Am. Compl. ¶¶ 86–133.) Not surprisingly, a significant topic explored in discovery was Mr. Maldonado's potential history, if any, of opioid use or abuse. (*See* Decision & Order 3.) While Mr. Maldonado's family members testified at their depositions that they were unaware of any opioid or narcotics use by Mr. Maldonado, Plaintiff's expert witness opined that Mr. Maldonado did not suffer from an opioid overdose at the time of his death because he had a tolerance to opioids. (*See id.* at 3–4.)

Approximately seven months after the conclusion of fact discovery and two weeks after the conclusion of expert discovery, Plaintiff's counsel notified Defendants that Plaintiff had found a single, unopened packet of Suboxone—a prescription medication used to treat individuals who are addicted to opioids—that she had discovered in Mr. Maldonado's bedroom shortly after his death. (*See id.* at 4–5.) Plaintiff knew she had kept the packet but could not recall where she had put it "due to the trauma of Mr. Maldonado's death" at the time that this Action was commenced one year later. (*Id.* at 5 (quotation marks omitted) (alteration omitted).) The Parties brought this disclosure to the Court's attention at a conference held on April 19, 2021. (*See id.*; *see* Dkt. (minute entry for Apr. 19, 2021).)

On June 10, 2021, the Parties filed competing motions as to this newly-discovered evidence. Plaintiff filed a Motion To Reopen Discovery on the "limited basis of how and when [the packet] was discovered" so that the packet could be provided to Plaintiff's expert witness, (*see* Not. of Mot. To Reopen Disc. (Dkt. No. 163)), and Defendants filed a Motion To Preclude Plaintiff from introducing the Suboxone packet as evidence, (*see* Not. of Mot. to Preclude (Dkt. No. 157)). On March 31, 2022, Judge Krause denied Defendants' Motion To Preclude and

granted Plaintiff's Motion To Reopen Discovery. (Decision & Order 1.) On April 14, 2022 Defendants timely filed their Objections to Judge Krause's Order, (*see generally* Obj's), to which Plaintiff responded on April 27, 2022, (*see generally* Pl.'s Resp. to Obj's (Dkt. No. 177)).

## II.  Analysis

### A.  Standard of Review

A district court reviewing a decision from a magistrate judge addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  However, "[u]nder Rule 72 of the Federal Rules of Civil Procedure, 'when a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide,' the district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, Nos. 18-CV-1781, 18-CV-7692, 2022 WL 153183, at *2 (S.D.N.Y. Jan. 18, 2022) (alteration omitted).  "Orders involving discovery are considered nondispositive." *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, — F. Supp. 3d — , 2021 WL 5299193, at *2 (S.D.N.Y. Nov. 15, 2021).  "An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed' and is 'contrary to law if it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure.'" *Id.* (quoting *Blackrock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-10067, 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018)).  Because "'[a] magistrate judge is best qualified to judge the entire atmosphere of the discovery process,'" his "'rulings on discovery matters are entitled to substantial deference.'" *Michelo*, 2022 WL 153183, at *2

4

(quoting *U2 Home Entm't Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-CV-6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)).

B. Analysis

On March 31, 2022, Judge Krause issued a decision denying Defendants' Motion To Preclude and granting Plaintiff's Motion to Reopen Discovery. (*See* Decision & Order 1.) In so doing, Judge Krause found that: (1) Plaintiff did not have a "culpable state of mind" in failing to timely product the Suboxone packet, making sanctions inappropriate, (*see id.* at 10–12); (2) the majority of the factors set forth in *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006), weighed against preclusion of the Suboxone packet, including because a continuance is appropriate at this stage of the proceedings and Defendants would suffer little prejudice in having to prepare to meet this new evidence, (*see id.* at 12–15). Defendants object to these two rulings, arguing that Judge Krause's decision was clearly erroneous because: (1) Judge Krause overlooked the fact that Plaintiff had a "substantial advantage to be gained . . . in belatedly producing the . . . packet of Suboxone" in finding that Plaintiff did not have a "culpable state of mind," (Obj's 2–4); (2) Judge Krause inappropriately used a subjective inquiry in determining that Plaintiff's delayed production did not rise to the level of gross or ordinary negligence, which is sufficient to satisfy the "culpable state of mind" element for sanctions, (*see id.* at 4–5); and (3) Judge Krause improperly found that the possibility of a continuance weighed against preclusion where discovery has already closed, (*see id.* at 5–6). The Court addresses each objection, in turn.

1. Judge Krause's Finding Regarding Plaintiff's State of Mind Was Not Clearly Erroneous

Defendants first argue that Judge Krause's determination that Plaintiff did not have a "culpable state of mind" in failing to timely produce the Suboxone packet is clearly erroneous,

because Judge Krause merely speculated that Plaintiff did not have a nefarious motive in delaying production, when in reality, the delay in production advantaged Plaintiff. (*See* Obj's 3–4.) Plaintiff argues that Defendants' version of events would have required Judge Krause—and would now require this Court—to create the notion that Plaintiff "executed an elaborate scheme to purposely withhold the existence" of evidence which is ultimately favorable to Plaintiff just to attempt to inconvenience Defendants. (*See* Pl.'s Resp. to Obj's 4.)

The Court agrees with Plaintiff. As this Court has already explained, Rule 72 provides that a magistrate judge's decision in resolving a discovery dispute may only be overturned if it is "clearly erroneous or contrary to law," FED. R. CIV. P. 72(a), a standard that imposes a "heavy burden" on the party seeking to overturn a discovery order, *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, 334 F.R.D. 68, 72 (S.D.N.Y. 2020); *see also New Falls Corp. v. Soni*, No. 18-CV-2768, 2021 WL 878742, at *2 (E.D.N.Y. Mar. 8, 2021) ("Rule 72(a) provides for a highly deferential standard of review." (quotation marks omitted)); *Wood v. Mut. Redev. Houses, Inc.*, No. 14-CV-7535, 2019 WL 11590155, at *3 (S.D.N.Y. Apr. 26, 2019) ("Pursuant to this highly deferential standard of review, magistrate judges are thus afforded broad discretion in resolving discovery disputes and a party seeking to overturn a discovery order bears a heavy burden." (citation and alteration omitted)). Defendants have failed to meet this burden. In finding that Plaintiff did not have a culpable state of mind, Judge Krause clearly considered Defendants' argument—repeated here—that Plaintiff somehow stood to benefit from withholding evidence favorable to her case until after discovery deadlines had passed and thus run the risk that the evidence would be precluded, and wisely concluded that this argument "makes no sense whatsoever." (Decision & Order 10.) While Defendants might "disagree[] with th[is] ruling[] of [Judge Krause]," Defendants "ha[ve] made no showing that th[is] ruling[] w[as] 'clearly

erroneous or contrary to the law.'" *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, No. 89-CV-322, 1989 WL 201601, at *2 (S.D.N.Y. Aug. 30, 1989).

Accordingly, the Court finds that Judge Krause's decision is entitled to deference. Defendants' objection is thus overruled.

### 2. Judge Krause's Finding That Plaintiff Was Not Negligent Was Not Clearly Erroneous

Defendants next argue that Judge Krause erroneously applied a subjective, rather than objective, standard in determining that Plaintiff did not act negligently, and thus, without a culpable state of mind. (*See* Obj's 4–5.) Plaintiff agrees that the ordinary negligence standard requires an objective inquiry, but argues that Judge Krause correctly applied an objective inquiry here while taking into account the circumstances surrounding Plaintiff's discovery of the Suboxone packet. (*See* Pl.'s Resp. to Obj's 4–6.)

The Court agrees with Plaintiff. While Defendants are correct in observing that the Second Circuit's ordinary negligence standard requires an "objective inquiry [into] whether or not the person unreasonably breached a duty of care," (Obj's 5), this inquiry still requires an examination into the circumstances surrounding the disclosure, *see Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Sec., LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) (explaining, in the context of determining whether the failure to meet a discovery obligation constitutes negligence, that "[e]ach case will turn on its own facts and the varieties of efforts and failures is infinite"). Reference to the Restatement (Second) of Torts is instructive. The Restatement defines negligence as "a departure from a standard of conduct demanded by the community for the protection of others against unreasonable risk." Restatement (Second) of Torts § 283 cmt. c (Am. L. Inst. 1965). While this must be an "objective and external" standard, "allowance must be made for some of the differences between individuals," including whether

7

the risk was apparent to the actor, and the circumstances surrounding the act. *Id.* This standard is ideal because it provides "sufficient flexibility[] and leeway" to account for differences between individuals and "for all of the particular circumstances of the case which may reasonably affect" conduct. *Id.* The qualities of someone acting reasonably therefore differ depending on the circumstances, including an individual's "intelligence, knowledge, and experience." *Id.* at cmt. d; *see also Tylena M. v. Heartshare Child.'s Servs.*, 390 F. Supp. 2d 296, 314 (S.D.N.Y. 2005) ("[A] claim based on negligence requires a showing that the defendant failed to act in accordance with the standard of 'a reasonable man *under like circumstances.*'" (emphasis added) (quoting Restatement (Second) of Torts § 283)).

Here, the Court finds that Judge Krause properly took into consideration the fact that Plaintiff happened upon the Suboxone packet shortly after her son's death and a year before the commencement of this Action in considering whether her failure to timely disclose the existence of the Suboxone was negligent. (*See* Decision & Order 11–12.) *See also Pension Comm.*, 685 F. Supp. 2d at 471 (explaining that the decision "to award sanctions is inherently subjective" and requires a "'gut reaction' . . . as to whether a litigant has complied with its discovery obligations"); *accord Yu Chen v. LW Rest., Inc.*, No. 10-CV-200, 2011 WL 3420433, at *19 (E.D.N.Y. Aug. 3, 2011) (same). Accordingly, the Court concludes that Judge Krause's finding that Plaintiff had a non-negligent explanation for the delayed disclosure is not clearly erroneous.

### 3. Judge Krause's Finding That the Possibility of a Continuance Weighs Against Preclusion Was Not Clearly Erroneous

Finally, Defendants argue that Judge Krause erred in finding that a continuance could be granted here because courts in the Second Circuit have "routinely held" that when discovery has already closed, the "possibility of a continuance" weighs in favor of preclusion. (*See* Obj's 5–6.) Plaintiff disagrees and argues that the cases Defendants cite in favor of their argument are either

8

interpreted incorrectly or are distinguishable. (*See* Pl.'s Resp. to Obj's 6–8.) The Court agrees with Plaintiff.

First, while Defendants argue that case law supports their position, they have offered no practical reason as to why a continuance is not easily feasible here. While discovery has closed, the Court has not yet even set a briefing schedule for summary judgment, let alone a trial date. (*See* Dkt.) Where "no trial date is set . . . the possibility of a continuance is very much a reality." *Feltenstein v. City of New Rochelle*, No. 14-CV-5434, 2018 WL 3752874, at *9 (S.D.N.Y. Aug. 8, 2018). Indeed, "[p]ostponing trial for a limited time would," in actuality, "not necessitate a continuance since no trial date has been set," allowing Defendants "ample time to investigate" both the Suboxone packet and the circumstances surrounding Plaintiff's discovery of it. *Id.* (quotation marks omitted).

Second, while Defendants cite a number of cases to support their position, all are distinguishable or inapposite. For example, Defendants cite to *Colon v. Linchip Logistics LLC*, 330 F.R.D. 359 (E.D.N.Y. 2019), and *523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600 (S.D.N.Y 2014), but both cases are easily distinguishable because the motions to reopen discovery in those cases were made in conjunction with motions for summary judgment. *See Colon*, 330 F.R.D. at 361; *523 IP LLC*, 48 F. Supp. 3d at 606. Further, in both cases, discovery had been closed for considerably longer than it had been in this Action. *See Colon*, 330 F.R.D. at 368 (five months); *523 IP LLC*, 48 F. Supp. 3d at 638 (approximately one year). Defendants also pull the following quote from *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006): "weighing heavily on both the prejudice and possibility of continuance factors was the fact that discovery had been closed for 'approximately one and a half years,'" but fail to include the second half of the quote which reads "and at the time of the offer of expert testimony *there was only a 'short time left*

*before trial.* " *Id.* at 297 (emphasis added).  And, again, here no trial date has been set and discovery had only been closed for two weeks when Plaintiff disclosed the new evidence.  (*See* Decision & Order 14–15.)

Further, Judge Krause cited ample caselaw to support his position.  (*See, e.g.*, Decision & Order 14–15 (citing *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 162 (S.D.N.Y. 2012) and *Schiller v. City of New York*, Nos. 04-CV-7922, 04-CV-7921, 2008 WL 4525341 at *7 (S.D.N.Y. Oct. 9, 2008)).  The Court therefore finds that Judge Krause's well-reasoned decision is entitled to deference.[1]

### III. Conclusion

For the reasons stated above, Defendants' Objections are overruled and Judge Krause's Order denying Defendant's Motion To Preclude and granting Plaintiff's Motion To Reopen Discovery is affirmed.

SO ORDERED.

DATED:    June 30, 2022
          White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[1] In any event, even if the Court were to agree with Defendants and find that the possibility of a continuance weighs in favor of preclusion, this would not ultimately change the outcome because Judge Krause found that two of the other *Patterson* factors weigh against preclusion—findings which Defendants have not challenged. (Decision & Order 15; *see generally* Obj.'s.) *See also Feltenstein*, 2018 WL 3752874, at *9 (finding "preclusion is not warranted . . . because two of the four [*Patterson*] factors weigh against such relief").

10