UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY MALDONADO, *as the Administratrix of the Estate of Jonathan Maldonado*,

                           *Plaintiff*,

    v.

TOWN OF GREENBURGH, *et al.*,

                           *Defendants*.

No. 18-CV-11077 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

    Nancy Maldonado ("Plaintiff") brings this Action in her capacity as the Administratrix of the Estate of Jonathan Maldonado ("Maldonado"), against the Town of Greenburgh, Police Officer Jean-Paul Lara, Lieutenant Gregory P. Attalienti, Police Officer Richard Maguire, and Detective/Paramedic Sean Freeman ("Freeman") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 and New York law. (*See generally* Am. Compl. (Dkt. No. 63).)

    The Court assumes the Parties' familiarity with the factual and procedural background of the Action as described in its prior Opinion. *See Maldonado v. Town of Greenburgh*, No. 18-CV-11077, 2024 WL 4336771, at *2–7 (S.D.N.Y. Sept. 26, 2024). On September 26, 2024, the Court granted Defendants' motion for partial summary judgment (the "Motion"). *See generally id.* On October 7, 2024, the Court held a telephonic status conference. (*See* Dkt., minute entry dated Oct. 7, 2024.) On July 9, 2025, the Court construed Defendants' supplemental briefing as a motion for reconsideration, which it denied. (*See generally* Dkt. No. 251.)

    On July 21, 2025, Defendants filed a letter noting that in their motion for partial summary judgment they had moved for summary judgment on Plaintiff's "state law claims alleging that

[D]efendants failed to provide proper medical care," that Plaintiff had responded, and that the Court had not addressed this portion of the Motion. (Dkt. No. 252 at 1.) Defendants are correct, and so the Court addresses this discrete portion of the summary judgment briefing. For the reasons discussed below, the Court grants in part and denies in part summary judgment on Plaintiff's state law claim for negligence.

As an initial matter, it is necessary to parse the contours of Defendants' argument and the claim on which they seek summary judgment. While the former is relatively clear, the latter is most decidedly not. According to Defendants' brief, they seek dismissal of Plaintiff's "state law negligence claim." (Defs' Mem. in Supp. of Mot. for Sum. J. ("Defs' Mem.") (Dkt. No. 228) 23.) This is Plaintiff's sixth claim, which is styled as a negligence claim against all Defendants. (*See* Am. Compl. 13–14.) Specifically, there are four subparts on which the claim is predicated: (1) "the use of excessive force in effectuating Mr. Maldonado's seizure;" (2) "the deliberate indifference to Mr. Maldonado's medical needs;" (3) "the failure of all Defendants to take reasonable steps to intervene to prevent the excessive use of force[;]" and (4) "the denial of proper medical care, despite having ample, realistic opportunity to provide it." (Am. Compl. ¶ 115.) Defendants argue that the negligence claim must fail. (Defs' Mem. 23–27.) The Court addresses each subpart in turn.

First, Defendants argue that the first two subparts of the negligence claim, describing excessive force and deliberate indifference, respectively, should be dismissed because "a negligence claim in which the alleged negligent conduct is an intentional tort fails as a matter of law." (*Id.* 23.) Plaintiff does not squarely address this point. Rather, she repeats at length the Court's discussion of governmental function immunity in its decision on Defendants' Motion to Dismiss. (Pl's Mem. in Opp. to Mot. for Sum. J. ("Pl's Opp.") (Dkt. No. 231) 18–19.) It is

unclear to the Court how its finding that Plaintiff had plausibly alleged the existence of a special relationship that precluded application of the governmental function immunity at the motion to dismiss stage is relevant to the argument at summary judgment that a state negligence claim cannot be based on intentional conduct. As to the first subpart, Defendants are correct that "'under New York State law, when a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.'" *Bogart v. City of New York*, No. 13-CV-1017, 2016 WL 4939075, at *13 (S.D.N.Y. Sept. 6, 2016) (quoting *Tatum v. City of N.Y.*, No. 06-CV-4290, 2009 WL 124881, at *10 (S.D.N.Y. Jan. 20, 2009)); *see also Benbow v. City of New York*, No. 17-CV-6457, 2024 WL 5165073, at *11 (E.D.N.Y. Dec. 19, 2024) ("District courts in this circuit 'have held that when a plaintiff's factual allegations are only consistent with a theory of intentional, or perhaps reckless, conduct, negligence claims must be dismissed.'" (italics omitted) (quoting *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015))). As to the second subpart, "it is well established that negligence cannot form the basis of a deliberate indifference claim." *Ryan v. Cnty. of Nassau*, No. 12-CV-5343, 2018 WL 354684, at *7 (E.D.N.Y. Jan. 10, 2018). Accordingly, the first two subparts of the negligence claim are dismissed to the extent they are "impermissibly based on the same conduct underlying [the] excessive force and intentional tort claims." *Hayden v. City of New York*, No. 17-CV-1894, 2019 WL 11272910, at *6 (S.D.N.Y. Mar. 31, 2019); *see also Benbow*, 2024 WL 5165073, at *11–12 (granting summary judgment on negligence claims as duplicative of excessive force and assault and battery claims).

The second subpart, which refers to "the deliberate indifference to Mr. Maldonado's medical needs," (Am. Compl. ¶ 115), should also be dismissed because it is duplicative. New York law recognizes a claim for deliberate indifference to medical needs "when no alterative

3

remedy exists." *Mahone v. City of New York*, No. 13-CV-8014, 2014 WL 1407702, at *7 (S.D.N.Y. Apr. 11, 2014) (citing *Thomas v. State*, 814 N.Y.S.2d 565 (Table), 2005 WL 3681655, at *3 (N.Y. Ct. Cl. 2005)). Where remedies are available under 42 U.S.C. § 1983 ("Section 1983"), "there is no private right of action under the New York State Constitution." *Id.* (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013)). The Court granted summary judgment dismissing Plaintiff's Section 1983 deliberate indifference claim. *Maldonado*, 2024 WL 4336771, at *18. "Because Plaintiff was able to, and did, bring a deliberate medical indifference claim pursuant to Section 1983, Plaintiff's deliberate medical indifference claim under the New York State Constitution [must be] dismissed." *Foskey v. Northrup*, No. 20-CV-504, 2025 WL 1920379, at *4 (N.D.N.Y. May 6, 2025); *cf. Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870, 2024 WL 4817649, at *13 (S.D.N.Y. Nov. 18, 2024) (granting summary judgment on a state law claim where the court had already adjudicated the coextensive Section 1983 claim).

The third subpart to Plaintiff's negligence claim refers to "the failure of all Defendants to take reasonable steps to intervene to prevent the excessive use of force." (Am. Compl. ¶ 115.) Neither Party explicitly addresses this subpart. (*See generally* Defs' Mem.; Pl's Opp.; Defs' Reply Mem. in Supp. of Mot. for Sum. J. ("Defs' Reply") (Dkt. No. 238).) "The failure of all [P]arties to address the sufficiency of Plaintiff's failure to intervene claim with regard to New York law could be attributed to the fact that whether such a claim exists under New York law is not clear." *Lichy v. Cnty. of Cattaraugus*, No. 23-CV-1272, 2024 WL 5355586, at *21 (W.D.N.Y. Aug. 8, 2024) (citing *Santiago v. City of Yonkers*, No. 21-CV-764, 2023 WL 2648649, at *11 n.13 (S.D.N.Y. Mar. 27, 2023) ("It is unclear if 'failure to intervene' is a valid cause of action pursuant to New York State law.")), *report and recommendation adopted*, 2025

4

WL 277468 (W.D.N.Y. Jan. 23, 2025).  Accordingly, because Defendants do not clearly and explicitly address why this subpart should be dismissed, summary judgment is denied on this subpart.

The fourth subpart asserts a negligence claim based on "the denial of proper medical care, despite having ample, realistic opportunity to provide it."  (Am. Compl. ¶ 115.)  Defendants characterizes this as a "negligence claim concern[ing] the alleged inadequacy of medical treatment provided to Jonathan Maldonado."  (Defs' Mem. 24.)  Plaintiff appears to concur with this framing of the claim, as she argues that "Freeman could be held liable for negligently providing medical care to the incapacitated Mr. Maldonado."  (Pl's Opp. 19.)  Defendants argue that they are entitled to summary judgment on this subpart because

> (1) medical malpractice claims against police officers are not viable; (2) Plaintiff has failed to proffer evidence that Defendants breached any recognized standard of care, resulting in harm to Jonathan Maldonado; (3) Defendants are entitled to discretionary immunity for medical decisions made in emergency situations and (4) Defendants are shielded under New York's Good Samaritan Law.

(Defs' Mem. 24.)  Again, Plaintiff's Opposition focuses on the argument that a reasonable juror could find that there was a special relationship between Freeman and Maldonado.  (Pl's Opp. 18–20.)  Defendants concede that they do not raise the special relationship argument in their motion for summary judgment.  (*See* Defs' Reply 16.)[1]  Defendants instead focus on characterizing this claim as one for medical malpractice.  (*See* Defs' Mem. 24.)

---

[1] The Court notes that Freeman's status as a paramedic, as opposed to an emergency medical technician or EMT, adds a layer of complexity to the governmental function immunity question.  *See Bilajac v. Fariwa*, 215 N.Y.S.3d 761 (Table), 2024 WL 3819864, at *4–6 (N.Y. Sup. Ct. 2024) (discussing the lack of New York caselaw on whether advanced life support emergency medical technicians, i.e., paramedics, perform governmental functions).  Because Defendants do not raise this argument or otherwise address governmental function immunity, the Court will not dive further.

"[T]he distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and 'no rigid analytical line separates the two.'" *Rabinovich v. Maimonides Med. Ctr.*, 113 N.Y.S.3d 198, 202 (N.Y. App. Div. 2019) (internal quotation marks omitted) (quoting *Weiner v. Lennox Hill Hosp.*, 673 N.E.2d 914, 916 (N.Y. 1996)). "[A]n action sounds in ordinary negligence when jurors can utilize their common everyday experiences to determine the allegations of a lack of due care," whereas "an action sounds in medical malpractice where the determination involves a consideration of professional skill and judgment." *Id.* at 202–03 (citations omitted). "[T]he New York Court of Appeals has held that a medical malpractice claim 'may apply to acts or omissions committed by individuals and entities other than physicians where those acts or omission either constitute medical treatment or bear a substantial relationship to the rendition of medical treatment.'" *Flannery v. Cnty. of Niagara*, 763 F. Supp. 3d 364, 442–43 (W.D.N.Y. 2025) (quoting *Karasek v. LaJoie*, 699 N.E.2d 889, 891 (N.Y. 1998)). Freeman is a police officer and paramedic. (*See* Defs' 56.1 Statement ("Defs' 56.1") (Dkt. No. 227) ¶ 92.) The Parties describe Freeman as having rendered medical treatment to Maldonado. (*See, e.g.*, Defs' Mem. 15 ("Detective Freeman administered medical assistance consistent with a suspected overdose."); Pl's Opp. 19 ("Freeman could be held liable for negligently providing medical care to [Maldonado]."); Defs' 56.1 ¶174 (stating that Freeman checked Maldonado's airway); *id.* ¶ 176 (stating that "Freeman made [a] clinical decision to administer Narcan"); *id.* ¶ 199 (stating that Freeman injected Maldonado with a dose of Narcan).) These circumstances clearly "require consideration of the professional skill and knowledge of [Freeman] . . ., [such that] the more specialized theory of medical malpractice applies." *Rabinovich*, 113 N.Y.S.3d at 204.

> In order to establish a prima facie case of medical malpractice, a plaintiff must prove (1) the standard of care in the locality where the treatment occurred, (2) that

6

>the defendant[s] breached that standard of care, and (3) that the breach of the standard was the proximate cause of injury.

*Navarro v. Ortiz*, 163 N.Y.S.3d 257, 259 (N.Y. App. Div. 2022) (quotation marks omitted) (quoting *Pieter v. Polin*, 50 N.Y.S.3d 509, 510 (N.Y. App. Div. 2017)); *see also I.M. v. United States*, 362 F.Supp.3d 161, 190 (S.D.N.Y. 2019) (setting out the standard). "It is well established in New York law that unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice." *Kurtz v. Hansell*, 664 F. Supp. 3d 438, 465 (S.D.N.Y. 2023) (internal quotation marks omitted) (quoting *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987)), *aff'd sub nom. Kakar Kurtz v. Lawson*, No. 23-7548, 2025 WL 39860 (2d Cir. Jan. 7, 2025)

Defendants' first argument, that the medical malpractice claim may not proceed against police officers, (Defs' Mem. 24), does not squarely address the situation here. Freeman is a police officer *and* a paramedic. (Defs' 56.1 ¶ 92.) New York courts clearly entertain medical malpractice suits against paramedics. *See, e.g.*, *Rosario v. Montefiore Med. Ctr.*, 234 N.Y.S.3d 497, 498 (N.Y. App. Div. 2025) (affirming a grant of summary judgment in suit bringing a medical malpractice claim against paramedics); *Rossy v. City of Buffalo*, No. 17-CV-937S, 2023 WL 5723071, at *6 (W.D.N.Y. Sept. 5, 2023) (collecting cases) ("Rendering ambulance services constitutes health care falling within the scope of medical malpractice."). Accordingly, this is not a ground for dismissal.[2]

---

[2] The Court notes that Defendants could have argued, but did not, that non-paramedic individual Defendants are entitled to summary judgment on the medical malpractice claim because they, unlike Freeman, did not render any medical treatment.

Defendants' second argument is that there is no evidence that Defendants have breached a recognized standard of care. (Defs' Mem. 25–26.) Defendants get the standard backwards—"[a defendant] moving for summary judgment dismissing a complaint alleging medical malpractice must establish, prima facie, either that there was no departure [from the standard of care in the community] or that any departure was not a proximate cause of the plaintiff's injuries." *A.B. by Alverez v. United States*, No. 16-CV-2554, 2019 WL 10302175, at *10 (S.D.N.Y. Apr. 17, 2019) (quoting *Gillespie v. N.Y. Hosp. Queens*, 947 N.Y.S.2d 148, 150 (N.Y. App. Div. 2012)); *see also Rosario*, 234 N.Y.S.3d at 498 (affirming the dismissal of a complaint where defendant "sustained its prima facie burden of demonstrating the absence of a departure from the standard of care by the subject emergency medical technicians and of proximate causation"). "The moving party's burden 'can be met by the submission of affidavits and/or deposition testimony and medical records which rebut plaintiff's claim of malpractice with factual proof.'" *Kurtz*, 664 F. Supp. 3d at 465 (quoting *McFarland v. United States*, No. 12-CV-5162, 2014 WL 6389589, at *5 (E.D.N.Y. Nov. 14, 2014)). Defendants do not discuss or meet their burden. (*See generally* Defs' Mem.; Defs' Reply.) "[I]t is not the role of the Court to search the summary judgment record for evidence supporting a party's motion or opposition thereto." *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262, 2023 WL 3996530, at *7 (S.D.N.Y. June 14, 2023) (quoting *Knight v. Nassau Cnty.*, No. 17-CV-958, 2019 WL 3817392, at *4 (E.D.N.Y. Aug. 14, 2019)). The Court finds, therefore, that this is not a ground for dismissal.

Defendants next assert that they are entitled to "discretionary immunity for medical decisions made in emergency situations," (Defs' Mem. 24), but the following pages of their brief are devoid of any discussion of discretionary immunity, (*see id.* 24–27). The Court will not

8

delve deeper into this cursory argument. *See Mercado v. Mount Sinai Beth Israel*, No. 21-CV-10467, 2023 WL 5975322, at *7 (S.D.N.Y. Sept. 14, 2023) ("Courts need not consider cursory arguments of this kind, and the Court declines to do so here." (quoting *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 432 n.17 (S.D.N.Y. 2019))); *Allstate Vehicle & Prop. Ins. Co. v. Mars*, 533 F. Supp. 3d 71, 82 (E.D.N.Y. 2021) (declining to consider an unsupported, cursory argument).

Defendants then assert that New York's Good Samaritan Law, N.Y. Pub. Health L. § 3000-a(1), shields Freeman. (*See* Defs' Mem 26.) The Good Samaritan law applies to persons "who voluntarily and without expectation of monetary compensation render[] first aid or emergency treatment at the scene of an accident or other emergency outside a hospital, doctor's office or any other place have proper and necessary medical equipment." N.Y. Pub. Health L. § 3000-a(1). Plaintiff is correct that the Good Samaritan law does not apply here because Freeman did not "voluntarily" render medical treatment to Maldonado. (*See* Pl's Opp. 20.) Defendants appear to agree, because they do not push the point in their reply brief. (*See* Defs' Reply. 16–17.) Freeman was not a volunteer, but rather was operating in the course and within the scope of his employment as a paramedic and police officer. *Cf. Rennix v. Jackson*, 990 N.Y.S.2d 439 (Table), 2014 WL 1303427, at *14 (N.Y. Sup. Ct. 2014) (finding that caselaw and statutes that concern "volunteer ambulance services" did not apply to the City of New York's provision of emergency medical services because the City "does not provide volunteer services and, instead, performs a governmental function"), *aff'd*, 59 N.Y.S.3d 57 (N.Y. App. Div. 2017). Defendants' cited case, *Rodriguez v. New York City Health & Hospitals Corporation*, 505 N.Y.S.2d 345 (N.Y. Sup. Ct. 1986), is inapposite, as it concerns a doctor who "treated the decedent in an apparent emergency situation" when the doctor was "ascending the stairs to [his]

9

apartment," *id.* at 346–47. There, the doctor was not operating within the course and scope of his employment as a doctor, but was clearly a volunteer.

Finally, Defendants argue that the "Barker-Manning rule" applies. (*See* Defs' Mem. 26–27.) The Barker-Manning rule provides that

> when the plaintiff has engaged in activities prohibited, as opposed to merely regulated, by law, the courts will not entertain the suit if the plaintiff's conduct constituted a serious violation of the law and the injuries for which he seeks recovery were the direct result of that violation. In this latter instance recovery is denied, not because the plaintiff contributed to his injury, but because the public policy of this State generally denies judicial relief to those injured in the course of committing a serious criminal act.

*Barker v. Kallash*, 468 N.E.2d 39, 41 (N.Y. 1984); *see also Manning by Manning v. Brown*, 689 N.E.2d 1382, 1384–85 (N.Y. 1997) (discussing the rule). "The rule applies only where a plaintiff's injuries were 'a direct result of a serious violation of the law involving hazardous activities which were not justified under the circumstances.'" *Zamierowski v. Nat'l R.R. Passenger Corp.*, No. 05-CV-9309, 2008 WL 11517440, at *9 (S.D.N.Y. June 9, 2008) (quoting *Barker*, 468 N.E.2d at 42). Courts apply the rule to preclude a plaintiff from recovery where "there is no dispute that [the plainitff's] injuries were the direct result of an admittedly illegal activity." *Wolfe v. Hatch*, 943 N.Y.S.2d 296, 298 (N.Y. App. Div. 2012); *see also Gentile v. Malenick*, 112 N.Y.S.3d 364, 365 (N.Y. App. Div. 2019) (finding that the Barker-Manning rule applied where "[p]laintiff failed to raise a triable issue of fact" with respect to defendant's argument that "decedent's death was the direct result of [the] illegal conduct"); *Hathaway v. Eastman*, 968 N.Y.S.2d 841, 844 (N.Y. Sup. Ct. 2013) (finding that the Barker-Manning rule applied where there was "[no] . . . doubt that plaintiff's injuries directly resulted from his participation in the [illegal] drag race"), *aff'd*, 996 N.Y.S.2d 382 (N.Y. App. Div. 2014). The Court has previously noted that, while "Defendants do not move for summary judgment on any

causation-related issues," the Parties clearly dispute the cause of Maldonado's death. *Maldonado*, 2024 WL 4336771, at *6 n.12. Accordingly, "because there are disputed issues of fact that could affect the application of th[e] narrow [Barker-Manning] rule to [P]laintiff's alleged conduct, [D]efendants are not entitled to summary judgment on this ground." *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 69 n.15 (E.D.N.Y. 2010).[3]

### III.  Conclusion

For the reasons set forth above, Defendant's Motion is granted in part and denied in part on Plaintiff's sixth cause of action. Specifically, Plaintiff's negligence claim as to the alleged failure to intervene and medical malpractice survive.

SO ORDERED.

Dated:   July 28, 2025
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

[3] The Court notes, as did Defendants, that Plaintiff's theory of causation has shifted over the course of this Action. (*See* Dkt. No. 250 at 1.) This neither entitles Defendants to summary judgment nor warrants its denial; rather, this is just another example of the myriad disputes that the Parties maintain in this Action.